Case 4:20-cr-00241 Document 51 Filed on 01/27/21 in TXSD Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
January 27, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| VS. § | CRIMINAL ACTION NO. 4:20-CR-241 |
| § | |
| TAM PHO VONG, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Joseph Trung Quang Huynh's (Huynh) Motion to Suppress, which Defendant Tam Pho Vong ("Vong") has adopted. (Dkts. 21 & 26) Huynh and Vong seek to suppress the firearm that police officers recovered during the stop of a vehicle driven by Vong, and in which Huynh was a passenger, that was searched without a warrant. Huynh also seeks to suppress all statements he made to police officers during the traffic stop. The Government filed its Response to the Motion to Suppress. On November 10, 2020 the Court conducted an evidentiary hearing at which both the United States and the defendants presented testimony and exhibits. Subsequently, the Court denied the defendants' motions. The Court will now explain in greater detail the reasons for its earlier ruling.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Officers Kunkel, Nguyen, Meola, Aguilera, and Gallardo of the Houston Police Department (HPD) testified at the suppression hearing held on November 10, 2020. Evidence admitted at the hearing also included body camera footage from police officers at the scene of the traffic stop that led to Huynh and Vong's arrest. The Court concludes that there is no considerable dispute between the parties concerning the factual background to this action and the Government provided credible evidence supporting the factual record as described in the Government's Response to the Motions to Suppress. Accordingly, the Court finds that the following facts have been established by the credible evidence.

On April 10, 2020, officers from the Houston Police Department's Gang Division/Crime Reduction Unit were conducting surveillance of a game room on the 8000 block of Boone Rd. in West Houston that had in the past been the location of drug trafficking and gang activity. Officer Kunkel, operating undercover in an unmarked police vehicle, set up surveillance at the game room. He would report what he observed over the radio to officers who were waiting nearby, but out of sight of the game room.

At approximately 2:30 PM, Officer Kunkel saw a black Mazda SUV with two Asian male occupants, later identified as defendants Huynh and Vong, pull into the strip mall. The driver, Vong, entered the game room for a few minutes, reentered his vehicle, and quickly drove away. Kunkel testified that it was unusual for patrons who were utilizing the game room legally to leave a passenger in the vehicle and to remain in the game room for such a short period of time. This, coupled with the criminal history of the game room, led the officers to believe that the incident may have been a drug transaction.

Marked units in the area followed the Mazda SUV as Vong drove away. Officers Nguyen and Houston were in one of the units and Officers Meola and Curtis were in another. These officers observed the Mazda speeding and driving erratically, swerving in and out of traffic "like a halfback looking for a hole" and not signaling lane changes. The vehicle turned right onto Stroud Road without signaling and pulled into the driveway of 1118 Stroud Road. The vehicle pulled in so quickly that the officers following Huynh and Vong were unable to immediately make the turn and had to turn around to pull up in the driveway behind the Mazda SUV.

Officer Nguyen observed Vong start to get out of the vehicle with something dark in his hand, observe the approaching officers, then sit back down in the vehicle and quickly place the item in his hand under the driver's side seat. As he exited the vehicle, Vong was immediately placed in handcuffs, patted down and questioned by Nguyen near the driver's side door of the Mazda. Before Vong was escorted to a police car, Nguyen was informed that officers had found a handgun on Huynh. Nguyen then placed Vong in the back of a police car. (Dkt. 34 at p. 3)

While this was occurring, Officers Gallardo and Aguilera, who had also arrived on the scene, approached the passenger, Huynh, on the passenger side of the vehicle. He too was placed in handcuffs as he exited the vehicle and questioned near the passenger door. When asked if he had any weapons, Huynh stated that he had a pistol in his waistband. Huynh also admitted that he was a felon. Officers found a .45 caliber Sig Sauer pistol in Huynh's waistband. Officers then placed Huynh in the back of a police car, After Vong and Huynh were in police cars, Officer Nguyen returned to the Mazda SUV, opened one

of the doors and found a loaded black .40 caliber Berretta pistol under the driver's side seat with the safety in the "off" position.

Officers conducted a records check and found that there was a warrant out for Huynh from Fort Bend County for evading arrest and confirmed that he was a convicted felon. The check also revealed that Vong was a convicted felon and was on supervised release for a drug trafficking conviction. Vong and Huynh were subsequently charged in this case for being felons in possession of a firearm in violation of 18 U.S.C. § 922(g).

Vong and Huynh have now filed the pending motion to suppress the Government's use at trial of the firearm recovered at the scene and Huynh's statements to officers at the scene. They assert that the traffic stop, their detention, and the search of the vehicle violated their rights under the Fourth Amendment of the United States Constitution and therefore the firearm collected by officers at the scene should be suppressed in this prosecution. Huynh argues that his statements to the officers at the scene should also be suppressed because he was not given his *Miranda* rights before he answered their questions. (Dkt. 21) For the reasons discussed below, the Court disagrees with these arguments and the motion to suppress is **DENIED**.

## II.     APPLICABLE LAW

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. "Because the Fourth Amendment itself contains no enforcement mechanism, the exclusionary rule developed as a judicially-created remedy to safeguard Fourth Amendment rights." *United States v. Edmond*, No. 18-cr-00091-01,

2018 WL 4178228, at *3 (W.D. La. Aug. 6, 2018) (citing *Davis v. United States*, 564 U.S. 229, 236 (2011)). "In general, the exclusionary rule prohibits the introduction of evidence at trial that is derivative of an unconstitutional search or seizure and thereby deters police misconduct." *Id.* (citing *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005)). "Under the fruit of the poisonous tree doctrine, all evidence derived from an illegal search or seizure must be suppressed unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation." *Id.* (citing *United States v. Jones*, 234 F.3d 234, 243–44 (5th Cir. 2000)).

"Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of [his] constitutional rights." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). Warrantless searches are presumptively unreasonable under the Fourth Amendment; the Government bears the burden of establishing by a preponderance of the evidence that the search or seizure was constitutional. *Edmond*, 2018 WL 4178228, at *4 (citing *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999); *United States v. Berick*, 710 F.2d 1035, 1037 (5th Cir. 1983); *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012)).

Traffic stops are deemed seizures for the purposes of the Fourth Amendment. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1

(1968). *Lopez-Moreno*, 420 F.3d at 30. Under *Terry*, courts take a two-pronged approach and "ask whether the officer's action was (1) justified at its inception; and (2) reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (citing *Terry*, 392 U.S. at 19–20) (internal quotation marks omitted). Under the first prong of a Terry analysis, for a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion—before stopping the vehicle— that some sort of illegal activity, such as a traffic violation, has occurred or is about to occur. *See United States v.* Breeland, 53 F.3d 100, 102 (5th Cir. 1995).

### III. ANALYSIS

#### A. Detention of Vong and Huynh

Under the first prong of the *Terry* analysis, the Court concludes that the traffic stop of the Mazda SUV driven by Vong was justified at its inception. The testimony of the officers following Vong and Huynh establish that the officers had probable cause to believe that Vong had violated Texas motor vehicle laws. While following the Mazda SUV, officers observed Vong driving erratically, speeding, and failing to signal before turning. These offenses alone provided enough reasonable suspicion for officers to detain the vehicle and its occupants during a traffic stop. Thus, *Terry*'s first prong is satisfied.

Vong and Huynh argue that HPD was investigating "Asian gang activity" in the area and decided to stop the defendants based on their race. However, the proper basis for objecting to discriminatory application of the laws is the Equal Protection Clause, not the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("We of course agree with petitioners that the Constitution prohibits selective enforcement of the

law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.") An allegation that the traffic stop may have been pretextual in order to search for drugs after allegedly suspicious behavior at the game room does not mean the stop was made without reasonable suspicion. *See id.; United States v. Harris*, 566 F.3d 434–35 (5th Cir. 2009) (In conducting a *Terry* analysis, the court does not delve into an officer's subjective motivation for making a traffic stop.) Here, reasonable suspicion was established when the officers observed the vehicle committing traffic violations prior to the stop.

Turning to the second prong, in *Terry*, the Supreme Court held that police officers may detain individuals briefly on the street, even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot. *See generally United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc) (discussing and applying *Terry*). Reasonable suspicion under *Terry* must be based on specific and articulable facts, and the facts must be judged against an objective standard. *Id.*

To satisfy the second prong of the *Terry* test, the detention must not be more intrusive than necessary to effectuate the purpose of the stop. *Lopez-Moreno*, 420 F.3d at 430 (citing *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004)). During a traffic stop, a police officer who reasonably believes that he is dealing with armed and dangerous individuals may also conduct a limited protective search for weapons. An officer may order persons out of an automobile during a stop for a traffic violation and

may frisk them for weapons if the officer has a reasonable belief that they are armed and dangerous. *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), For purposes of justifying a *Terry* pat-down, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Adams v. Williams*, 407 U.S. 143, 146 (1972). Officers are also permitted to question a vehicle's occupants during a traffic stop while they wait for the results of a records check to come back, as long as they do not impermissibly prolong the stop to do so. *Lopez-Moreno*, 420 F.3d at 430–31.

An officer may use some degree of physical force to affect an investigatory stop, which force might, in some situations, include restraining the suspect with handcuffs. But such force must be objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386 (1989). The purpose of the *Terry* pat-down is "to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972). As courts have recognized, investigative detentions involving suspects in vehicles are especially fraught with danger to police officers and even a total restriction of liberty such as handcuffing, if brief and not excessive under the circumstances, is permissible during a *Terry* stop. *See United States* v. Sanders, 994 F.2d 200 (5th Cir. 1993); *United States v. Bautista*, 684 F.2d 1286 (9th Cir. 1982). The Court will not substitute its judgment for that of the handcuffing officer when common sense and ordinary human experience convince the Court that the officer reasonably believed that handcuffing was

required to conduct the investigative stop safely. *See United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000); *United States v. Powell*, 732 F.3d 361, 369–70 (5th Cir. 2013); *United States v. Glenna*, 878 F.2d 967 (7th Cir. 1989).

Here, the officers' conduct with respect to Vong did not exceed the bounds of a reasonable investigative detention. Once the vehicle was stopped, Vong's prior suspicious behavior at the game room, erratic driving, and furtive movements with a dark object in his hand as officers approached him justified the officers' actions with respect to Vong during the stop. The Court concludes that, under these circumstances, Vong's constitutional rights were not violated by officers immediately placing him in handcuffs as he exited the vehicle, asking him whether he had any weapons on his person and patting him down for weapons. *See Lopez-Moreno*, 420 F.3d at 430–31 (officers' questions do not need to pertain to the itinerary of the trip). The officers' suspicions that Vong may have been armed and dangerous and that a crime was afoot were further heightened by being informed that Huynh had a weapon on his person and justified placing him the police car until a records check could be completed.

Likewise, the Court concludes that the officers' actions with respect to Huynh did not exceed the bounds of a reasonable investigative detention. At the time he was ordered out of the vehicle, placed in handcuffs, and questioned, Huynh was a passenger in a car that officers suspected had just been used in a drug transaction and that had been driven erratically; Huynh was also in close proximity to whatever dark object Vong had furtively placed under the driver's seat. Based on these facts, officers had a reasonable

suspicion that Huynh had been involved in criminal conduct with Vong and that he potentially posed a danger to officers. When questioned, Huynh immediately admitted that he had a gun in his waistband and that he was a felon, giving officers probable cause to believe that he had committed the crime of being a felon in possession of a firearm and could be arrested.

### B. Search of the Car and Recovery of the Firearm

Vong and Huynh argue that the search of the Mazda SUV without a warrant that resulted in the discovery of the firearm violated their constitutional rights. The Court disagrees. Warrantless searches are generally unreasonable under the Fourth Amendment because they lack the oversight and authorization of a detached, neutral magistrate. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Courts have recognized several exceptions to this rule when probable cause otherwise exists and practicality necessitates expediency, including in the contexts of automobile and searches incident to arrest. *United States v. Ross*, 456 U.S. 798 (1982). The search incident to a lawful arrest exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant*, 556 U.S. at 338. Therefore, the exception permits police to search only the passenger area of an automobile incident to a recent occupant's arrest if it is reasonable to believe the vehicle contains evidence of the arrestable offense. *Id.*

Here, the officers had probable cause to believe that at least Huynh had committed the crime of being a felon in possession of a firearm when they placed him in the police

car. It was at that point during the stop that Officer Nguyen returned to the vehicle and searched for other firearms. At that juncture and considering the totality of the circumstances, the officers had probable cause to believe that additional evidence of the offense, such as firearms, was concealed in the car. Under the search incident to a lawful arrest exception, the officers were initially only permitted to search the passenger area of the Mazda SUV. *Gant*, 556 U.S. at 351. However, after the officers found the firearm and the records check was completed, they were justified in searching the entire car for additional weapons and contraband.

### C. Huynh's Statements During the Traffic Stop

Hunyh also argues that his statements to officers during the stop should be suppressed on the grounds that, after handcuffing him, the officers immediately questioned him without informing him of his *Miranda* rights. In light of the evidence presented at the hearing the Court disagrees.

In general, "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless" the defendant has first been given *Miranda* warnings. *United States v. Miranda*, 384 U.S. 436, 444–45 (1966). However, "a Fourth Amendment seizure does not necessarily render a person in custody for purposes of *Miranda*. For example, traffic stops—stops which constitute a Fourth Amendment seizure—do not automatically place a person in custody for purposes of *Miranda*." *United States v. Bengivenga,* 845 F.2d 593, 598 (5th Cir. 1988). As the

Fifth Circuit has made clear, "[o]fficers possessing reasonable articulable suspicion of a person's participation in criminal activity may seize the suspect in accord with the Fourth Amendment to conduct an investigative stop—a narrow intrusion involving limited detention accompanied by brief questioning and, if justified, a frisk for weapons." *Id*. at 599. As discussed above, this stop could include briefly handcuffing the suspect. *See e.g. Jordan*, 232 F.3d at 450. "Such investigative stops do not render a person in custody for purposes of *Miranda*." *Bengivenga,* 845 F.2d at 598. *Terry* explicitly allows officers to make "reasonable inquiries," during the course of an investigatory stop, "where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety[.]" *Terry*, 392 U.S. at 30. The Fifth Circuit has repeatedly upheld investigatory detentions, pursuant to *Terry*, where no *Miranda* warnings were given. *United States v. Lewis*, 273 F.3d 1095 (5th Cir. 2001).

    Here the Court concludes that the officers' reasonable inquiries of Huynh were for the protection of the officers and others nearby. Such questions are allowable during a *Terry* stop and did not convert the stop into a custodial interrogation requiring *Miranda* warnings. At the time that Huynh spoke to officers, the officers were engaging in in "conduct more analogous to a noncustodial investigative stop than a formal arrest." *Bengivenga*, 845 F.2d at 599.

For the reasons stated above, the Court finds that the officers had sufficient reasonable suspicion to conduct a traffic stop and detain and question both Vong and Huynh and had probable cause to search the passenger compartment of the Mazda SUV. Accordingly, the Motion to Suppress (Dkt. 21) is **DENIED**.

SIGNED at Houston, Texas, this 27th day of January, 2021.

*[Signature]*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE